UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                  :
:
-v-                                        :
:                  20 Cr. 582 (PAC)
ALBERTO BAEZ-ACEVEDO,                      :
:
Defendant.              :                  **ORDER**
:
-----------------------------------------------------------------X

Defendant Alberto Baez-Acevedo ("Defendant") is charged with (1) possession with intent to distribute narcotics (the "Narcotics Offense") and (2) the use, carrying, and possession of a firearm in furtherance of the Narcotics Offense (the "Firearms Offense"). Defendant now moves both to dismiss the Firearms Offense, and for the Court to hold an evidentiary hearing to determine the admissibility of over 400 grams of fentanyl seized during his arrest. For the reasons set forth below, the motion to dismiss is **DENIED**, and the motion for an evidentiary hearing is **GRANTED**.

## BACKGROUND

On July 29, 2020, in a New York City stairwell,[1] officers executed a warrantless arrest of Defendant as he was exiting an apartment building, allegedly to deliver fentanyl to a confidential source ("CS-1") working with the U.S. Drug Enforcement Administration.[2] Compl. ¶¶ E–J, ECF No. 1. According to the Complaint, Defendant was carrying a "black shopping bag" containing a

---

[1] The Complaint initially stated that the arrest occurred in the building's lobby. *See* Compl. ¶ G, ECF No. 1. The Government has subsequently clarified that it in fact occurred in the stairwell. *See* Gov. Memo. 2–3, ECF No. 21.

[2] Defendant does not contest the Government's claim that officers had probable cause for the arrest based on their observations of Defendant's movements as well as his monitored conversations with CS-1. *See* Gov. Memo. 10–11. For purposes of this Order, the Court assumes there was probable cause.

1

box of crackers which, in turn, "contained a wrapped, brick-like structure." *Id.* at ¶ G; *see also* Florez Affirmation, Ex. B, ECF No. 19. The parties dispute whether the cracker box was open or closed. *See* Def. Memo. 3, ECF No. 20; Gov. Memo. 3, ECF No. 21. The "brick-like structure" in the box is alleged to have contained over 400 grams of fentanyl. *See* Gov. Memo. 1.

The parties also dispute whether Defendant consented to this search. According to the Complaint, officers asked "to search [the bag]" and "[Defendant] consented." Compl. ¶ G. Inside the bag, officers then found and searched the cracker box; the Complaint does not indicate whether consent to search the box was specifically obtained, or whether it was inferred from Defendant's alleged consent as to the bag. *See id.* Defendant maintains that he did not consent to a search of the bag or the cracker box. *See* Def. Affidavit ¶¶ 7–8, ECF No. 19-1. He further notes that the Government's lack of specificity regarding his alleged consent to search the bag sits in stark contrast with its "highly detailed and documented proof of his consent" as to the subsequent search of his apartment. Def. Memo. 7.

Defendant does not dispute that he consented, orally and in writing, to a search of the apartment belonging to his girlfriend and her mother, where Defendant was residing.[3] *See* Def. Memo. 7. During the apartment search, officers seized a "silver revolver located in the closet of [Defendant's] bedroom" that Defendant then confirmed "in substance and in part" belonged to him. Compl. ¶ K. Defendant does not directly dispute this allegation; instead, he argues that the Government has failed to show that he "exercised actual or constructive control over the firearm" or that the revolver was "actually used during or in relation to, and in furtherance of, the alleged narcotics sale." Def. Memo. 5–6.

---

[3] Defendant's girlfriend and her mother also allegedly consented to the search. *See* Gov. Memo. 3.

2

## DISCUSSION

### I. Defendant's Motion to Dismiss

Defendant contends that because the Government's disclosures regarding both his control of the revolver and its connection to the Narcotics Offense are relatively sparse, the Firearms Offense must be dismissed. The Court disagrees. Motions to dismiss an indicted count "must satisfy a high standard." *United States v. Kerik*, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009) (internal quotation marks and citations omitted). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). Here, both requirements are plainly satisfied. Defendant's assertions as to the sufficiency of the Government's firearms evidence are a matter for trial, not grounds for dismissal. *See id.* at 777 (where indictment is facially valid, "a challenge to the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment").

### II. Defendant's Motion for an Evidentiary Hearing

The Court, however, agrees with Defendant that an evidentiary hearing is necessary to rule on the admissibility of the fentanyl seized during his arrest. "On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." *United States v. Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010). The Government argues it has carried this burden based on two distinct theories: (1) that Defendant in fact consented, and (2) that even absent Defendant's consent, the fentanyl would inevitably have been discovered through a search incident to his lawful arrest.

But the record, in its current form, fails to demonstrate that Defendant consented to the search of the bag or the cracker box allegedly containing the seized fentanyl. Unlike for the apartment search, evidence of written consent as to the bag has not been presented to the Court. And although the Government claims it obtained verbal consent to search the bag, Defendant claims otherwise. Furthermore, whether and how any purported consent as to the bag extended to the box is unclear. The Court therefore cannot resolve the matter based on the current record.

Nor can the Court determine whether, even absent consent, the fentanyl would inevitably have been discovered through a lawful search incident to arrest. Courts in the Second Circuit set a high bar for inevitable discovery: illegally-obtained evidence is admissible "only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006). Further, unlike the federal "area [of] immediate control" test governing searches incident to arrest, *see Arizona v. Gant*, 556 U.S. 332, 339 (2009), under New York law, "exigent circumstances are required to justify warrantless searches incident to arrest of closed pouches or containers." *United States v. Bell*, No. 19-cr-717 (LAK), 2020 WL 370342, at *2 (S.D.N.Y. Jan. 22, 2020) (citing *People v. Jimenez*, 22 N.Y.3d 717, 722 (2014)). Here, the parties dispute whether the cracker box was open or closed. Moreover, neither party addresses whether exigent circumstances existed at the time of Defendant's arrest, nor indeed whether New York law should govern in this instance. Thus, the Court is unable to determine, based on the current record, whether the fentanyl would inevitably have been discovered pursuant to a lawful search incident to arrest.

The parties do not address any other circumstances that may have brought the seized fentanyl within the ambit of the inevitable discovery exception, including whether Defendant's

4

belongings would have been subject to an inventory search. *See, e.g., United States v. Ellis*, No. 19-cr-857 (NSR), 2020 WL 6784139, at *1 (S.D.N.Y. Nov. 17, 2020). The Court thus, again, cannot decide the question based on the current record.

## **CONCLUSION**

Accordingly, Defendant's motion to dismiss the Firearms Offense is denied, and his motion for an evidentiary hearing as to the admissibility of the fentanyl is granted. The hearing will take place Wednesday, November 10, 2021 at 4:00 PM.

At the hearing, the parties are directed to present evidence and arguments as to (1) whether Defendant consented to the search that uncovered the fentanyl; and/or (2) whether the fentanyl is admissible under the inevitable discovery exception, pursuant either to a lawful search incident to arrest, an inventory search, or any other applicable grounds.

Dated: New York, New York
       October 5, 2021

SO ORDERED

/s/ Paul A. Crotty
_____
HONORABLE PAUL A. CROTTY
United States District Judge